OPINION
{¶ 1} Plaintiff-Appellant State of Ohio appeals from an order suppressing evidence. The State contends that the trial court erred when it concluded that the police officer who stopped defendant-appellee Franklin Williams, and patted him down, lacked a reasonable and articulable suspicion for the stop and pat-down.
 {¶ 2} Based upon our review of the evidence in the record, we conclude that the police officer's suspicion did not rise to the level of reasonable articulable suspicion required for a stop and pat-down. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} Dayton police officer Kevin Phillips, a 13-year veteran, was with his partner, David House, in plain clothes, in an unmarked vehicle, one night in May, 2002. Phillips saw the driver of a Chrysler New Yorker that was pulled up next to a vacuum system at a new convenience store gas station at the intersection of Edwin J. Moses Boulevard and Third Street. Phillips became suspicious of this person, who was not Williams. There were two occupants of the car, other than the driver.
 {¶ 4} Some time later, a Caprice pulled into the store parking lot. Williams was driving the Caprice, and there was a female passenger. They both got out of their car and walked to the entrance to the store. The woman went in the store. Williams, who was headed toward the entrance of the store, made a 45 degree turn, and went to a rear passenger door of the New Yorker, which, by this time, had pulled up alongside the Caprice. Williams got in the back seat of the Chrysler.
 {¶ 5} Meanwhile, a marked police cruiser, with a uniformed crew, coincidentally arrived in the parking lot of the store, and proceeded to a city gas pump. Williams got out of the New Yorker, after having been in the back seat a couple minutes. The New Yorker then left the store, without speeding. Williams went to the driver's door of the Caprice and opened it. He bent over "toward the lip of the driver's door." Phillips could not see what Williams was doing. Phillips could only see Williams' back, and the back of his legs, and his arms going down. The woman who had been in the Caprice had not yet left the store.
 {¶ 6} Williams then looked over the top of his car toward the cruiser, shut his door, and walked toward the entrance of the store. At this point, Phillips became concerned that Williams might have been concealing a weapon in his car. Phillips, who was now in radio contact with the uniformed crew, instructed them to stop Williams. By this time, Williams had already entered the store.
 {¶ 7} The woman passenger then left the store, and got in the passenger side of the Caprice. Williams then left the store. He hesitated next to a parked, unoccupied pick-up truck. Williams looked in the direction of the cruiser, then walked to the driver's side of the Caprice.
 {¶ 8} Dayton police officer Clint Anderson, one of the uniformed crew in the marked cruiser, stopped Williams, and patted him down, out of concern for his safety. Anderson had been told by Phillips that Williams was suspected of having been involved in a drug transaction. Anderson felt a plastic baggie with a large piece of crack cocaine in Williams' jacket pocket. By this time, Phillips had arrived at the scene. When Phillips saw that Anderson had found something, he took hold of Williams' arm, and Williams was handcuffed behind his back. The suspected piece of crack cocaine was subjected to a field test, and tested positive. Williams was arrested and charged with possession of more than ten grams of crack cocaine, a second-degree felony in violation of R.C. 2925.11(A).
 {¶ 9} Williams moved to suppress the evidence, contending that it was obtained as the result of an unlawful stop and pat-down. Following an evidentiary hearing, the trial court rendered a decision concluding that the evidence did not support the existence of reasonable and articulable suspicion sufficient to justify a stop and pat-down. Accordingly, the trial court entered an order suppressing the evidence. From this order, the State appeals.
 II {¶ 10} The State's sole assignment of error is as follows:
 {¶ 11} "The trial court erred in finding that the officers did not have a reasonable suspicion that Williams was engaged in wrongdoing when they detained him and patted him down."
 {¶ 12} The State argues that the totality of the circumstances Phillips observed, viewed in the light of his thirteen years of experience as a police officer, constituted the reasonable and articulable suspicion necessary for an investigative stop under Terry v.Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868. We disagree.
 {¶ 13} Phillips testified that the physical layout of the parking lot of the All in 1 Food
 {¶ 14} Mart was consistent with locations where drug transactions frequently take place. He testified that these locations feature commercial parking lots having steady vehicular and pedestrian traffic. Phillips testified that he was aware of as many as 50 transactions that had taken place in similar commercial parking lots on an area of Edwin J. Moses Boulevard that is near an intersection with Interstate 75 and the University of Dayton Arena. He acknowledged, however, that no drug transactions had previously been observed in the parking lot of the All in 1 Food Mart, noting that it is a brand new establishment.
 {¶ 15} Phillips testified that he first became suspicious when the driver of the Chrysler New Yorker was holding a vacuum hose, but was not using the vacuum. However, under cross-examination, Phillips admitted that that was when he first observed the driver, and he had no way of knowing whether the driver had previously been using the vacuum. Phillips testified that his suspicion was reinforced when he saw the driver put down the vacuum hose, get into the car, and pull forward next to a pay phone, then get out of the car, and stand next to the pay phone. The Caprice arrived about five minutes later. On cross-examination, Phillips acknowledged that he could not see whether the driver of the Chrysler New Yorker used the pay phone.
 {¶ 16} When the Caprice arrived on the scene, Phillips saw the front seat passenger in the Chrysler New Yorker react by looking in the direction the Caprice was traveling, and by turning his head to follow the Caprice. That at least someone in the Chrysler New Yorker knew Williams was evident from the fact that Williams got out of the Caprice and went to the New Yorker, and got into the back seat of the New Yorker. As the trial court notes in its decision, this is entirely consistent with Williams having seen someone he knew and getting into the other car to visit while his female passenger was in the store.
 {¶ 17} Phillips testified that his suspicion was further reinforced when Williams got out of the New Yorker, went back to his car, opened the driver's door, and reached down to the "lip" of the driver's door. Phillips acknowledged that he could not see what Williams was doing. Again, as the trial court noted in its decision, this is consistent with Williams returning to his car to get his wallet or something else to take into the store.
 {¶ 18} The only other factors that Phillips indicated as contributing to his suspicion was the fact that the occupants of the Chrysler New Yorker watched the marked cruiser as it entered the lot, and the fact that Williams looked "in the direction of the cruiser" both just before he went in the store, and just after he came out of the store. Phillips acknowledged, on cross-examination, that he is aware that many people follow marked police cruisers with their eyes, and that Phillips, himself, does so.
 {¶ 19} The mere fact that Williams looked "in the direction of the police cruiser," both before entering the store and after exiting the store, is not, in our view, sinister. Before walking in, or adjacent to, a parking lot with steady vehicular traffic, it is good practice to observe vehicles to make sure that they are not about to move in a direction that might be dangerous to the pedestrian.
 {¶ 20} We agree with the State that the issue of whether Phillips had a reasonable and articulable suspicion, sufficient to order the stop and pat-down, must be determined based on the totality of the circumstances, and that a combination of circumstances, no one of which is particularly suspicious, might give rise to a reasonable articulable suspicion. However, we conclude that the totality of the circumstances observed by Phillips did not rise to the level of reasonable articulable suspicion.
 {¶ 21} The State's sole assignment of error is overruled.
 III {¶ 22} The State's sole of assignment of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF and YOUNG, JJ., concur.